**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI**

IN RE:

YOLANDA D. TAYLOR,                                            CASE NO. 12-11463-NPO

DEBTOR.                                                       CHAPTER 13

**MEMORANDUM OPINION
AND ORDER ON OBJECTION TO PROOF OF CLAIM
AND OBJECTIONS TO MORTGAGE PAYMENT CHANGES**

There came on for hearing on January 24, 2013 (the "Hearing"), the Objection to Proof of Claim (the "Objection") (Dkt. No. 21)[1] filed by the Debtor, Yolanda D. Taylor (the "Debtor"), and the Response to Debtor's Objection to Proof of Claim (Dkt. No. 32) filed by GMAC Mortgage, LLC ("GMAC") in the above-referenced bankruptcy case. There also came before the Court the Notice of Mortgage Payment Change (the "First Payment Change") (Dkt. No. 16) filed by GMAC, the Objection to Mortgage Payment Change [Dk#16] (Dkt. No. 25) filed by the Debtor, the Response to Debtor's Objection to Mortgage Payment Change [DK#16] (Dkt. No. 31) filed by GMAC, the Notice of Mortgage Payment Change (the "Second Payment Change") (Dkt. No. 45) filed by GMAC, the Objection to Mortgage Payment Change [Dk#45] (Dkt. No. 47) filed by the Debtor, and the Response to Debtor's Objection to Mortgage Payment Change [DK#45] (Dkt. No. 50) filed by GMAC. At the Hearing, Chris F. Powell represented the Debtor, and Pamela B. King represented GMAC. Having considered the pleadings as well as the testimony, exhibits, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:[2]

---

[1] Citations to docket entries in this bankruptcy case (Case No. 12-11463-NPO) are cited as "(Dkt. No. ____)".

[2] Specifically, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 9014 and 7052.

**Jurisdiction**

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Notice was proper under the circumstances.

**Facts**

On November 18, 2004, the Debtor entered into a thirty (30) year "Adjustable Rate Note" (the "Note") with Homestead Mortgage, LLC, in the amount of $97,750.00. (Cl. 3-1, Pt. 3). The Note provides for repayment in the amount of $748.15 per month at an initial annual interest rate of 8.45 percent. Commencing December 1, 2006, the interest rate changes every six months based on the "LIBOR" index. A notice must be provided the Debtor before the effective date of any interest rate change. If the monthly payment is not made in a timely manner, the Note requires the Debtor to pay a late charge in the amount of four (4) percent of the overdue payment of principal and interest.

To secure repayment of the Note, Debtor signed a deed of trust (the "Deed of Trust") (Cl. 3-1, Pt. 4) on her residence in favor of Homestead Mortgage, LLC. The Note and Deed of Trust are sometimes referred to together as the "Loan." The Deed of Trust requires the Debtor to make escrow payments for annual property taxes. (Cl. 3-1, Pt. 4, at 3). Also, the Debtor must maintain property insurance on the residence. (Cl. 3-1, Pt. 4, at 5). If the Debtor fails to maintain coverage, the lender may obtain insurance at the Debtor's expense in order to protect the lender's own interest in the property. (Cl. 3-1, Pt. 4, ¶ 5). The cost of insurance premiums is reimbursable and becomes payable upon notice to the Debtor. Finally, the lender may charge fees for services performed in connection with the Debtor's default, including attorney's fees, property inspection fees, and valuation fees. (Cl. 3-1, Pt. 4, at 8). When the Loan was acquired

later by U.S. Bank National Association as Trustee for RASC 2005-KS1, GMAC became the servicer. (Cl. 3-1, Pt. 2).

**2005 Case**

On September 30, 2005, the Debtor filed a voluntary petition for relief under chapter 13 of the U.S. Bankruptcy Code (the "2005 Case") (Case No. 05-17056-NPO, Dkt. No. 1).[3] On November 8, 2005, GMAC[4] filed a proof of claim (the "2005 Claim") (Case No. 05-17056-NPO, Cl. 3-1) in which it asserted a total debt of $101,979.12. The Debtor's chapter 13 plan (the "2005 Plan") was confirmed by the Court[5] on January 4, 2006. (Case No. 05-17056-NPO, Dkt. No. 22). The 2005 Plan provided that monthly payments of $748.15 would be made to GMAC by the chapter 13 trustee. (*Id.*). The 2005 Plan further provided that additional monthly payments of $69.42 would be made to GMAC by the chapter 13 trustee to cure the pre-petition arrearage of $4,165.40. (*Id.*).

GMAC filed an amended proof of claim (the "2005 Amended Claim") (Case No. 05-17056-NPO, Cl. 3-2) on June 5, 2009. In the 2005 Amended Claim, GMAC asserted a total debt of $97,132.41, including a pre-petition arrearage of principal and interest in the amount of $3,740.75. (*Id.*). In addition, GMAC asserted a shortfall in escrow of $7,139.10, purportedly

---

[3] Citations to docket entries in the 2005 Case are cited as "(Case No. 05-17056-NPO, Dkt. No. ____)".

[4] The 2005 Claim was filed by Homecomings Financial, LLC, an affiliate of GMAC. Because it makes no difference to the issues presented in this matter, the Court refers only to GMAC.

[5] The Order Confirming Plan, Awarding Fee to Debtor's Attorney and Related Orders (Case No. 05-17056-NPO, Dkt. No. 22), was signed by U.S. Bankruptcy Judge David W. Houston, III. On May 30, 2006, this case was transferred to the undersigned. *See* U.S. Bankruptcy Court for the Northern District of Mississippi, Standing Order of Transfer and Assignment (effective May 22, 2006), *available at* http://www.msnb.uscourts.gov.

representing premiums for force-placed property insurance coverage obtained by GMAC. (*Id.*). Shortly before filing the Amended 2005 Claim, GMAC filed a Notice of Mortgage Payment Change (Case No. 05-17056-NPO, Dkt. No. 50) advising the Debtor that her monthly payment would increase from $748.15 to $1,452.18 as of June 1, 2009, to include the insurance premiums. (*Id.*). In an Order (Case No. 05-17056-NPO, Dkt. No. 75) entered on August 12, 2009, the Court disallowed the recovery of the escrow shortage in the Debtor's regular monthly payment but ordered repayment of the insurance costs incurred by GMAC in equal monthly installments of $148.73 for the term of 48 months. (*Id.*).

Thereafter, the Debtor made all of her plan payments to the chapter 13 trustee, who then disbursed the plan payments in accordance with the 2005 Plan. These disbursements by the trustee included monthly payments on the Loan to GMAC. In a letter dated August 12, 2010, the chapter 13 trustee informed the Debtor that she had been paying the "regular monthly mortgage payment" but "[i]t is now your responsibility to make this payment of $865.96 and you must begin the payments with the month of September 2010." (Debtor Ex. 2).[6] On December 8, 2010, the Court entered the Order Finding that Long Term Debt Treated Per [§] 1322(b)(5) of GMAC ResCap, LLC Current and Defaults Are Cured (Debtor Ex. 1) in the 2005 Case. The trustee's last payment to GMAC was made on August 27, 2010. (*Id.*). Therefore, with respect to the 2005 Case, the Debtor's first post-discharge payment of $865.96 became due on September 1, 2010.

On February 14, 2011, the Debtor received a discharge of her debts pursuant to 11 U.S.C. § 1328(a). (Case No. 05-17056-NPO, Dkt. No. 113). The 2005 Case was closed on April 11, 2011. (Case No. 05-17056-NPO, Dkt. No. 115).

---

[6] Hereinafter, the exhibits of the Debtor are cited as "(Debtor Ex. ____)"; and the exhibits of GMAC are cited as "(GMAC Ex. ____)".

**Demand Letter**

Sometime in December, 2011, GMAC called the Debtor and told her that the Loan was in default. GMAC then notified the Debtor in a letter dated December 30, 2011 (the "Demand Letter"), that she had failed to pay the installments due for the months of April, 2010, through December, 2011, and demanded payment of $19,908.19, the purported amount in arrearage, within thirty (30) days. (Debtor Ex. 3). GMAC threatened foreclosure proceedings. In the Demand Letter, GMAC did not account for any of the payments made by the trustee on the Loan during the pendency of the 2005 Case.

The Debtor contacted her attorney, who sent GMAC a "Qualified Written Request" (the "QWR") on January 24, 2012. *See* 12 U.S.C. § 2605(e)(1)(B) (under the Real Estate Settlement Practices Act, a QWR triggers a servicer's duty to respond). GMAC responded to the QWR on February 3, 2012, with a copy of the Debtor's Loan history showing an arrearage from April 1, 2010, through February 1, 2012, of $23,046.36. (Debtor Ex. 5).

**2012 Case**

The Debtor filed a second chapter 13 petition for relief on April 6, 2012 (the "2012 Case"). GMAC filed a proof of claim (the "2012 Claim") (Cl. 3-1) on May 17, 2012, in which GMAC asserted a total debt of $119,000.21, including a pre-petition arrearage in the 2012 Case of principal and interest in the amount of $24,785.24, purportedly representing twenty-five (25) missed payments for the months of April, 2010, through April, 2012. (Cl. 3-1 at 4). Also included in the total debt were charges for attorney's fees, title costs, property inspection fees, escrow deficiencies, and late charges of $3,203.49. (*Id.*). In the Objection, the Debtor contests the pre-petition arrearage and charges asserted in the 2012 Claim.

GMAC filed the First Payment Change under Rule 3002.1(b) of the Federal Rules of Bankruptcy Procedure[7] on June 13, 2012, in which it purports to increase the principal and interest payment from $785.50 to $793.11, effective July 22, 2012,[8] based on a change in interest rate from 8.875 percent to 9 percent. GMAC alleges in the First Payment Change that the Debtor's total monthly payment is $1,009.63, which includes an escrow amount of $216.52. The escrow amount consists of the annual property tax and force-placed insurance premium allegedly due that year. GMAC obtained the force-placed insurance coverage with the belief that the Debtor had no insurance on the residence. In the Objection to Mortgage Payment Change [DK#16] (Dkt. No. 25), the Debtor does not dispute the change in interest rate or the escrow amount of $84.25[9] for payment of taxes. The Debtor challenges only the escrow amount to the extent it includes the cost of force-placed insurance coverage on the residence. According to the Debtor, the new interest rate should increase the monthly payment on the Loan as of July 22, 2012, only to $877.36.[10]

The Debtor's chapter 13 plan was confirmed by the Court on August 21, 2012 (Dkt. No. 20). The confirmed plan (the "2012 Plan") requires the trustee to pay GMAC the changed

---

[7] From this point forward, all references to rules are to the Federal Rules of Bankruptcy Procedure.

[8] This date, July 22, 2012, is the "[d]ate of payment change" shown in the First Payment Change form, although the attached computer print-out indicates an earlier effective date of July 1, 2012.

[9] The parties agreed at the Hearing that the monthly escrow amount for property taxes was $84.25, although it appears that the correct amount should be $84.30. (Debtor Ex. 8).

[10] $877.36 = $793.11 + $84.25.

amount, as set forth in the First Payment Change, of $1,009.63 per month in principal and interest, and escrow, and $455.55 per month toward the pre-petition arrearage of $27,332.76.[11]

In GMAC's Second Payment Change filed on December 11, 2012, GMAC reduces the monthly principal and interest payment from $793.11 to $778.13, as of January 1, 2013, based on a change in interest rate from 9 percent to 8.75 percent. GMAC alleges that the Debtor's new total monthly payment is $1,002.26. In the Objection to Mortgage Payment Change [Dk#45] (Dkt. No. 47), the Debtor again challenges the escrow amount to the extent it reimburses GMAC for the cost of force-placed insurance.

**Hearing**

At the Hearing, GMAC acknowledged in its opening statement that it had failed to credit the Debtor's account with the payments made by the chapter 13 trustee for the months of April, 2010, through August, 2010, during the pendency of the 2005 Case. GMAC did not explain whose account, if anyone's, was initially credited with these payments. Moreover, as of the Hearing, GMAC had not amended the 2012 Claim to correct those errors, more than eight (8) months since the 2012 Claim was filed.[12]

GMAC, however, insisted that it had "updated" its computer system to reflect that the Loan was current as of August, 2010, and that its computer system now accurately showed as of the date of the Hearing, an arrearage in principal and interest from February 1, 2011, through April 1, 2012, in the total amount of $15,501.06. (Cl. 3-1; GMAC Ex. 3). Indeed, according to GMAC, the Debtor made only four (4) separate payments after she received her discharge in the

---

[11] The sum of the arrearage in principal and interest of $24,785.24 and the charges of $3,203.49 is $27,988.73. To this sum, GMAC credits a "suspense" payment of $655.97 to reach the total of $27,332.76.

[12] As of the date of this Opinion, GMAC has still not amended the 2012 Claim.

2005 Case. These payments were applied to the installments due for the months of September, 2010, through January, 2011, said GMAC.[13] In addition to the arrearage in principal and interest of $15,501.06, GMAC seeks $1,291.85 in attorney's fees, title costs, property inspection fees, and accrued late charges. (Cl. 3-1). This amount does not include force-placed insurance costs and reduces the late charges erroneously applied to the Debtor's account.

The Debtor testified at the Hearing that from September 1, 2010, through November 1, 2011, she made every monthly payment directly to GMAC in the amount of $865.96. When she received GMAC's Demand Letter dated December 30, 2011, she stopped making payments to GMAC because she became convinced that GMAC was not properly crediting the payments to her account. This concern was bolstered by her inability to check the status of her Loan via the Internet. Her attempts to do so were met with a message informing her that GMAC was no longer servicing her Loan.

The Debtor further testified that she made all of her payments to GMAC in the form of U.S. Postal Service money orders. She provided copies of receipts from two of these money orders. (Debtor Ex. 9; GMAC Ex. 2). Because she claimed that she purchased most of the money orders with funds from her checking account, she also provided copies of her monthly bank statements from October, 2010, through December, 2011, (Debtor Ex. 10), which purportedly showed withdrawals corresponding to the dates she made payments to GMAC. Although in the months of August, 2011, and September, 2011, there were no cash withdrawals, the Debtor testified that her husband made those payments.

GMAC challenged the Debtor's credibility by producing its own copies of bank statements from September, 2010, through February, 2012 (GMAC Ex. 1) which, according to

---

[13] One of the four (4) payments was twice the monthly amount due and was applied to two (2) installments.

GMAC, showed that in some months either there were no withdrawals or there were withdrawals in amounts that did not match precisely the payments she claimed to have made to GMAC. The Debtor explained the discrepancy by reiterating that her husband sometimes gave her cash to purchase the money orders.

## Discussion

There are two matters for the Court's determination. First, there is the Debtor's Objection to the 2012 Claim regarding the amount of pre-petition arrearage. Second, there are the mortgage payment changes in the 2012 Case regarding the cost of force-placed insurance coverage on the residence. The Court addresses each matter in turn, beginning with the Objection.

**A.    2012 Claim**

The filing and allowance of a claim against a bankruptcy estate are governed by 11 U.S.C. § 501 and 11 U.S.C. § 502. The procedure for the filing and allowance of claims is governed by Rule 3001. The form and content requirements for a proof of claim are set forth in Rule 3001(a). If a proof of claim is filed in accordance with Rule 3001(a), the proof of claim constitutes *prima facie* evidence of the validity and amount of that claim pursuant to Rule 3001(f).[14] Under the procedural framework provided by Rule 3001, the claim will be allowed unless the party who objects to the proof of claim produces evidence that is at least as probative in force as that offered by the claimant in its proof of claim. *Gardner v. New Jersey*, 329 U.S. 565, 573 (1947); *Simmons v. Savell* (*In re Simmons*), 765 F.2d 547, 552 (5th Cir. 1985). If the debtor succeeds in producing sufficient rebuttal evidence, the burden of going forward shifts

---

[14] Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f).

back to the claimant who bears the ultimate burden of persuasion to establish the validity and amount of its claim by a preponderance of the evidence. *In re Pursue Energy Corp.*, 379 B.R. 100, 105 (Bankr. S.D. Miss. 2006). A preponderance of the evidence means "by the greater persuasive force thereof, and not the greater volume thereof, or the greater number of witnesses testifying thereto." *Sorrell v. Electronic Payment Sys, Inc.* (*In re Sorrell*), 292 B.R. 276, 288 (Bankr. E.D. Tex. 2002) (quotation omitted).

In the Objection, the Debtor does not allege that the 2012 Claim is untimely, incomplete, or otherwise procedurally improper. *Pursue Energy Corp.*, 379 B.R. at 105. Accordingly, the Court finds that the 2012 Claim is entitled to the evidentiary benefit of being deemed *prima facie* valid. Therefore, the burden of proof shifts to the Debtor to rebut the *prima facie* presumption of the validity and amount of the 2012 Claim.

### 1. Debtor's Rebuttal Evidence

Without question, GMAC failed to account properly for the payments made by the trustee on behalf of the Debtor for the months of April, 2010, through August, 2010, during the pendency of the 2005 Case. When confronted with records from the 2005 Case, GMAC acknowledged at the Hearing that it had made mistakes in its initial handling of the Debtor's Loan and conceded that the 2012 Claim overstated the pre-petition arrearage amount by at least $11,831.70.

The Court finds that GMAC's mishandling of its servicing of the Debtor's Loan constitutes sufficient evidence rebutting the initial presumption of validity with respect to the amounts challenged by the Debtor in the Objection. This evidence is at least equal in probative force to that offered by GMAC in the 2012 Claim. The mistakes made by GMAC were not inconsequential but involved a substantial arrearage amount that led GMAC to threaten the

Debtor with foreclosure prior to the Debtor's commencement of the 2012 Case and led GMAC to file the erroneous 2012 Claim in the 2012 Case. Accordingly, the Court finds that the evidentiary burden has shifted to GMAC to establish the amount of the pre-petition arrearage and the charges asserted in the 2012 Claim by a preponderance of the evidence. *In re Pursue Energy Corp.*, 379 B.R. at 105.

### 2. GMAC's Burden of Persuasion

For GMAC to meet its ultimate burden of persuasion, it must produce evidence tending to show that it is more likely than not that the loan was in arrears for the amount stated at the Hearing. *Sorrell*, 292 B.R. at 288. At this stage of the proceeding, the burden is heavier on GMAC than it was at the time of its initial filing of the 2012 Claim. *Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988).

Michael Batson ("Batson"), a senior litigation analyst at GMAC, testified at the Hearing as GMAC's sole witness in support of the 2012 Claim. Batson, whose employment with GMAC did not begin until March, 2011, did not have any involvement with the Loan until shortly before the Hearing. In preparation for his testimony, he reviewed the Debtor's account and spoke with a specialist in GMAC's bankruptcy department. At the Hearing, Batson testified that he accessed GMAC's computer system to view screens of the Debtor's payment history. GMAC also introduced into evidence the Debtor's bank statements for the purpose of challenging the Debtor's credibility. The Court finds that Batson's testimony and the exhibits introduced by GMAC into evidence are insufficient to satisfy GMAC's burden of persuasion.

In a factually analogous case, *In re Sacko*, 394 B.R. 90 (Bankr. E.D. Pa. 2008), the lender filed a proof of claim in which it asserted that the debtor had missed nineteen (19) monthly

mortgage payments, resulting in a pre-petition arrearage of $7,782.78. *Id.* at 95. The debtor testified that he made two lump-sum payments that the lender did not properly credit to his account. *Id.* at 102. The debtor did not provide any receipt or other document in support of his testimony. The bankruptcy court concluded that the lender's voluntary forbearance from proceeding with a foreclosure sale for a period of six months served as circumstantial evidence that the lender had actually received the first of the two payments. The court recognized that the Debtor's testimony disputing the accuracy of the arrearage was sufficient to shift the burden of proof to the lender. The bankruptcy court, however, did not find the debtor's self-serving testimony particularly credible, given his inability to recall certain key events. For that reason, the bankruptcy court did not allow a credit for the second payment.

As in *Sacko,* the Court finds that GMAC has failed to meet its burden of persuasion as to all of the components of the 2012 Claim. GMAC's contention that the Debtor failed to pay her debt from February 1, 2011, to November 1, 2011,[15] lacks credibility for two reasons. First, GMAC's computer system mistakenly treated the 2005 Case as pending until December, 2011. Second, until shortly before the Hearing, GMAC's computer system also mistakenly failed to account for payments made by the trustee from April 2010, through August, 2010, which caused GMAC to file the incorrect 2012 Claim. Batson's testimony was based almost entirely on the GMAC's computer-generated records. Yet, he could not explain adequately what caused these errors or what action was taken to correct the problems.[16]

---

[15] As mentioned previously, the Debtor does not dispute that she stopped paying GMAC in December, 2011.

[16] Batson himself was a credible witness, but his testimony lacked credibility because it was largely based on faulty computer records.

Why were the errors not caught when GMAC filed the 2012 Claim and why did it take GMAC eight (8) months to determine that the 2012 Claim was incorrect? Is there a systemic problem with GMAC's loan-servicing computer system? GMAC's inability to accurately calculate payments and charges dates back to the 2005 Case, as evidenced by the 2005 Amended Claim. GMAC cannot rely on its own records as evidence of an arrearage when GMAC has not shown that those records are more accurate as of the date of the Hearing than they were shortly before the Hearing. As aptly noted by the bankruptcy court in *In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008), "This Court will not excuse abject failures to comply with the rules and will not give claimants the benefit of the doubt when it comes to meeting their burden of proof. . . . . [T]his Court, in its role as gatekeeper, must assure that only those creditors who meet the evidentiary and filing requirements have their claims allowed." *Id.* (citation omitted).

Moreover, GMAC cannot establish the reliability of its computer system by criticizing the Debtor's own sloppy record-keeping practices. Certainly, there would be no dispute if the Debtor had kept receipts for all of the money orders or if she had paid by check. However, "[a] lender has an obligation to keep a full and accurate accounting of payments made and charges accrued, should be prepared to explain the contractual basis for all charges, and should be able to document that charges such as inspection fees, court costs, and the like were actually incurred and paid." *In re Parrish*, 326 B.R. 708, 721 (Bankr. N.D. Ohio 2005).

For these reasons, the Court finds that GMAC has not met its burden of proof and disallows the 2012 Claim with respect to the arrearage asserted from February, 2011, through November, 2011. With respect to the arrearage asserted in the 2012 Claim from December 2011, through April, 2012, the Court finds that the Debtor made no payments during these five (5) months. The Court now turns to the task of determining the amount of the pre-petition arrearage.

The Debtor testified that since September, 2010, her monthly payment of $865.96, which includes escrow, has not changed.  The documents that GMAC attached to the 2012 Claim, however, show that the principal and interest amount fluctuated based on changes in the interest rate.  The Court finds that the amounts documented by GMAC are more likely than not the amounts due under the Note.

As mentioned previously, the Deed of Trust allows the lender to collect a late charge of four (4) percent of any untimely payment of principal and interest.  Also, as to property taxes, there is no dispute that the proper escrow amount is $84.25 per month.  (Debtor Ex. 8).  Therefore, the total amount of unpaid principal and interest, the late charges, and the escrow amount for property taxes, is $4,489.93.  (GMAC Ex. 4).  The chart below provides a summary of the Court's findings as to the pre-petition arrearage as to these components of the 2012 Claim.

| Date | Principal & Interest | Late Charge | Escrow Amount |
|---|---|---|---|
| December, 2011 | $770.19 | $30.81 | $84.25 |
| January, 2012 | $785.50 | $31.42 | $84.25 |
| February, 2012 | $785.50 | $31.42 | $84.25 |
| March, 2012 | $785.50 | $31.42 | $84.25 |
| April, 2012 | $785.50 | $31.42 | $84.25 |

With respect to the charges for forced-placed insurance from December, 2011, to April 2012, the Debtor presented evidence at the Hearing that she had obtained property insurance on her residence from March 2, 2012, to March 2, 2013.  (Debtor Ex. 7).  GMAC acknowledged that in light of this evidence, the Debtor is entitled to a "partial" refund of the costs of property insurance premiums charged to the Loan during this time period.  The Debtor could not recall whether she had maintained property insurance prior to March 2, 2012.  She also could not recall whether she had received any notice regarding GMAC's purchase of property insurance coverage on the residence.  In that regard, GMAC provided copies of letters addressed to the

Debtor from April 7, 2006, through January 11, 2013 (GMAC Ex. 5). The Court finds that in the absence of any evidence refuting this component of the 2012 Claim, it is more likely than not that the notices were sent to the Debtor and, therefore, that the cost for force-placed insurance coverage incurred by GMAC from September, 2010 (after the Debtor's discharge in the 2005 Case) through March 2, 2012 (the date the Debtor obtained insurance coverage) is reimbursable as part of the pre-petition arrearage. The annual premium paid by GMAC for the period from July 30, 2010, to July 30, 2011, was $1,263.00, and from July 30, 2011, to July 30, 2013, was $1,678.00. (GMAC Ex. 5). When these premiums are divided by twelve (12), the monthly charge is $105.25 and $139.83, respectively. Therefore, for the applicable time period of September, 2010, through March, 2012, the pre-petition arrearage for the cost of force-placed insurance coverage is $2,276.39.

Turning next to the attorney's fees, title costs, and property inspection fees in the 2012 Claim, the Court disallows these pre-petition charges. GMAC's initial dereliction in its handling of the Debtor's Loan had a "cascading" effect. The extent to which GMAC's own mistakes contributed to these additional charges is unclear. Significantly, these charges were incurred from February 23, 2012, through March 12, 2012, when GMAC's computer system erroneously flagged the Loan as being in default during the pendency of the 2005 Case. (Cl. 3-1). (That error was not corrected until shortly before the Hearing.) Batson had no knowledge of any of these charges, and GMAC provided no documentation that would support a finding that the charges were reasonably incurred as the result of the Debtor's missed payments, rather than as a consequence of GMAC's inaccurate records. Moreover, there was no evidence in the record justifying the need for these charges. For example, the Debtor has continuously lived at the residence since the inception of the Loan. Why, then, was it necessary for GMAC to inspect the

residence on January 10, 2012, February 7, 2012, and March 12, 2012? *See Sacko*, 394 B.R. at 105-06.

**B.     2012 Payment Changes**

The Debtor contests the First Payment Change and the Second Payment Change for reasons similar to those she posited in the Objection to the 2012 Claim. She disputes GMAC's inclusion of the cost of force-placed insurance in the escrow amount of her monthly payments.

Rule 3002.1 governs changes to on-going house payments. Unlike a proof of claim, however, a notice of a payment change filed under Rule 3002.1(d)[17] does not enjoy a *prima facie* presumption of validity. The Debtor, therefore, has no evidentiary burden to overcome because the burden of proof remains with GMAC to establish the allowability of the amounts changed.

As a preliminary matter, the Court notes that the record is unclear as to when GMAC began adding insurance costs to the Debtor's regular monthly payments. In the 2005 Case, the trustee calculated the Debtor's first payment to GMAC to be only $865.96, an amount that clearly does not include insurance premiums.

More to the point, it is undisputed that the escrow amount for the property insurance premium included in the First Payment Change and Second Payment Change are incorrect because the Debtor obtained property insurance coverage effective March 2, 2012. There was no evidence at the Hearing that the Debtor allowed the insurance coverage to lapse after March 2, 2012. Accordingly, the Court finds that GMAC has failed to meet its burden of proving its

---

[17] Rule 3002.1(d) provides:

> A notice [of payment change] filed and served under subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate Official Form, and filed as a supplement to the holder's proof of claim. The notice is not subject to Rule 3001(f).

FED. R. BANKR. P. 3002.1(d).

entitlement to recover the costs of force-placed insurance in the Debtor's ongoing monthly payment and, therefore, disallows these costs.

## Conclusion

With respect to the Objection, the Court sustains in part and overrules in part the Objection. GMAC's 2012 Claim for pre-petition arrearage should be disallowed for unpaid principal and interest, late charges, and property taxes from September, 2010, through November, 2011. GMAC's 2012 Claim for pre-petition arrearage should be allowed for unpaid principal and interest, late charges, and property taxes from December, 2011, through April, 2012. The attorney's fees, title costs, and property inspection fees in the 2012 Claim should be disallowed. The costs of insurance coverage incurred by GMAC from September, 2010, through March 2, 2012, should be allowed. As to the First Payment Change and the Second Payment Change, the cost of property insurance included by GMAC in the Debtor's ongoing monthly payment should be disallowed.

IT IS, THEREFORE, ORDERED that the Objection is hereby sustained in part and overruled in part. The Objection is sustained as to the pre-petition arrearage asserted in the 2012 Claim for unpaid principal and interest, late charges, and property taxes from September, 2010, through November, 2011. The Objection is overruled in part as to the pre-petition arrearage asserted in the 2012 Claim for unpaid principal and interest, late charges, and property taxes from December, 2011 through April, 2012. As to these components of the 2012 Claim, GMAC is entitled to an allowed pre-petition arrearage of $4,489.93. In addition, GMAC is entitled to a pre-petition arrearage for the cost of insurance coverage incurred from September, 2010, through March 2, 2012, in the amount of $2,276.39. The Objection is sustained in part as to the attorney's fees, title costs, and property inspection fees asserted in the 2012 Claim. In sum, the

total amount of pre-petition arrearage allowed by the Court in the 2012 Claim for unpaid principal and interest, late charges, and property taxes from December, 2011 through April, 2012, and for the cost of insurance coverage from September, 2010, through March 2, 2012, is $6,766.32.

IT IS FURTHER ORDERED that the Debtor's monthly payment from date of the 2012 Case until July 22, 2012, is $869.75 ($785.50 + $84.25); from July 22, 2012 until January 1, 2013, is $877.36 ($793.11 + $84.25); and from January 1, 2013, to the present, is $862.38 ($778.13 + $84.25).

IT IS FURTHER ORDERED that the chapter 13 trustee shall credit the pre-petition arrearage of $6,766.32 with any excess payment that was made to GMAC through the 2012 Plan.

IT IS FURTHER ORDERED that the Debtor shall amend the 2012 Plan within fourteen (14) days of the date of this Order to show an on-going monthly payment of $862.38 and an additional monthly payment toward the pre-petition arrearage of $6,766.32. GMAC may file an objection to the amended 2012 Plan within fourteen (14) days of the date of the Debtor's filing of the amended 2012 Plan if GMAC contends that any of the calculations are inconsistent with the findings in this Opinion.

SO ORDERED.